# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 5, 2002

## STATE OF TENNESSEE v. BETSY DOWDY

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 97-01130, 97-01135     James C. Beasley, Jr., Judge**

---

### No. W2001-03104-CCA-R3-CD - Filed February 18, 2003

---

On September 20, 1999, the Defendant pled guilty to theft of property valued over $1000 and to attempted aggravated robbery. The trial court sentenced the Defendant to two years for the theft conviction and to six years for the aggravated robbery conviction. The trial court suspended both sentences and placed the Defendant on six years' probation. On June 24, 2001, the Defendant was arrested for theft of property valued over $500. Based on the arrest, the trial court revoked the Defendant's probation. The Defendant now appeals, arguing that the trial court erred by revoking her probation. Finding no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Betsy Dowdy.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michael S. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL BACKGROUND

The following evidence was presented at the Defendant's probation revocation hearing: Katherine Phillips testified that she was employed by the Tennessee Board of Probation and Parole. She stated that the Defendant, Betsy Dowdy,[1] was on probation for theft of property valued over

---

[1] The Defendant was indicted as "Betsy Dowdy." Although her name appears in various parts of the technical record and transcript as "Bessie Dowdy," it is the custom of this Court to use the name set forth in the charging

(continued...)

$1,000 and for aggravated robbery. Phillips testified that on October 11, 2001, she swore out a warrant against the Defendant based on the Defendant's arrest on June 24, 2001 for theft of property valued over $500. She stated that the Defendant had reported as instructed and that she had not tested positive for any drugs.

Colles Webb testified that he was a Loss Prevention Officer at J. C. Penney at Raleigh Springs Mall in Shelby County. He recalled that on April 5, 2001, he observed three adult females and a juvenile female "putting items in a bag in a basket." Webb testified that the Defendant approached a cashier and asked if anyone had turned in some lost keys. Webb stated that when the cashier told the Defendant that no keys had been found, the Defendant exited the door. He recalled that the juvenile who was pushing the shopping cart full of merchandise tried to follow the Defendant, but was apprehended by security. Webb testified that the Defendant and the other two adult females "took off running," got into a mini-van with the lights off, and drove backwards through the parking lot. Webb testified that he identified the Defendant in a photographic line-up as one of the individuals who had taken merchandise from J. C. Penney. He stated that the juvenile had merchandise valued at $588.14 in her bag. Webb identified the Defendant in court as one of the females who ran to the van.

On cross-examination, Webb testified that he was not wearing a uniform on the day that he witnessed the Defendant shoplifting. He recalled that the Defendant and the other females began collecting items around 7:00 p.m. Webb stated that he and another officer, Shannon Williams, witnessed the four females enter the store. He testified that a third officer, Derrick Albright, was involved in the case and that all three officers discussed the activities of the group via radio. Webb testified that the three officers walked to different locations in the store to watch the group of women. He acknowledged that the women were not in sight the entire time that they were inside the store. Webb testified that once the women were upstairs, they began loading a black plastic bag that was in a shopping cart. He stated that the women continued to pick up items for about an hour and a half. Webb reported that there was no video surveillance of the women. He testified that the women took shoes, socks, purses, shirts, jeans, slacks, pantsuits, boys' suits, shorts, and shirts. Webb testified that the women continually looked to see if anyone was watching them. He testified that after the women loaded the items into the bag, they walked past the cashiers and then ran to the mini-van. Webb testified that the officers were able to detain Sabrina Dowdy, who was pushing the cart containing the merchandise.

Webb stated that he was unable to get a license number from the mini-van because it was dark outside. He testified that after they apprehended the juvenile, they called the Memphis Police Department. Webb recalled that the police questioned the juvenile to find out the identities of the other women. He testified that two or three months after the incident, he identified the Defendant in a photographic line-up. Webb stated that the juvenile was the Defendant's niece.

_____

[1](...continued)
instrument, so we will refer to the Defendant as "Betsy Dowdy" throughout this opinion and in our judgment.

Samantha Dowdy, the Defendant's daughter, testified that she went with her mother to Raleigh Springs Mall on April 5, 2001 because her mother wanted to buy a new purse. Dowdy reported that her mother drove a white mini-van and that they arrived at the mall about 6:50 p.m. She stated that her cousin, Chaquita Townsend, also went with them to the mall. Dowdy recalled that they went to J. C. Penney at about 7:00 p.m., where they browsed and "looked around." Dowdy testified that her mother purchased a pair of panties and a purse at J. C. Penney. She stated that she stood in the cashier line with her mother and saw her mother pay for the merchandise. She testified that the cashier gave her mother a receipt for the purchase. Dowdy testified that Townsend left before the Defendant made the purchase.

On cross-examination, Dowdy testified that her cousin, Sabrina Dowdy, did not go to the mall with her and the Defendant. However, she testified that she had seen Sabrina Dowdy in the store with some friends. Dowdy denied that her mother shoplifted from the store. She stated that she did not know if Sabrina Dowdy implicated the Defendant.

Chaquita Townsend testified that the Defendant is her aunt and that Samantha Dowdy is her cousin. She testified that Sabrina Dowdy is her eleven-year-old sister. Townsend stated that she and her daughter, Trinia White, went to Raleigh Springs Mall with the Defendant and Samantha Dowdy on April 5, 2001. She testified that she and her daughter left the Defendant and went to the children's section. Townsend recalled that she and her daughter were in the line to make a purchase when she saw the Defendant again. She testified that she asked the Defendant if she was ready to leave, and the Defendant replied affirmatively. Townsend stated that the Defendant then "went back and got a purse." She acknowledged that she did not actually see the Defendant buy the purse. She stated that while at the store, nobody accused the Defendant of shoplifting. Townsend estimated that they left J. C. Penney around 8:50 p.m. Townsend reported that when they all got into the car to leave, the Defendant had a receipt in her hand. Townsend testified that the Defendant took her and her daughter home.

On cross-examination, Townsend testified that her sister, Sabrina Townsend, was not with her when she went to the mall and that Sabrina Townsend lied about the Defendant's stealing from J. C. Penney. She also testified that Webb was lying about seeing the Defendant stealing. She stated that the Defendant drove a white Mitsubishi mini-van. On re-direct examination, Townsend testified that she was not accused of shoplifting from J. C. Penney. She stated that her sister, Sabrina, is mentally retarded and takes "special classes." Townsend testified that Sabrina Townsend was there with some kids on April 5, 2001.

The Defendant testified that on April 5, 2001, she went to the mall with her daughter, Samantha Dowdy; her niece, Chaquita Townsend; and Townsend's daughter, Trinia. She recalled that they arrived at the mall around 6:45 p.m. The Defendant stated that she went to the mall to purchase a purse, a hat, and some undergarments. She testified that she put the items in a shopping cart, stood in the cashier line, and paid for the items. The Defendant identified in court a receipt showing purchases of underwear, a straw hat, and a crocheted hat bag from J. C. Penney. She stated that the time on the receipt was 8:53 p.m. The Defendant testified that after making the purchase,

she left the store at approximately 8:55 p.m. She stated that Chaquita Townsend and her daughter, Trinia, were already in the vehicle when the Defendant and Samantha Dowdy left J. C. Penney.

The Defendant testified that while she was in J. C. Penney, nobody accused her of shoplifting. She stated that when she left the store, she walked past Colles Webb. The Defendant acknowledged asking the cashier about her house keys. She stated that the cashier "called upstairs" and then told the Defendant that nobody had reported finding keys. The Defendant testified that the police arrested her on or about June 22, 2001.

On cross-examination, the Defendant testified that she was on probation for theft and attempted robbery. She acknowledged that she had "four or five, six maybe" previous thefts on her record. The Defendant stated that "sometimes" she was innocent of the charges. She stated that she saw her niece, Sabrina Dowdy, with some of her friends at the mall on April 5, 2001. The Defendant testified that Webb lied about seeing her shoplift from J. C. Penney. She denied taking $588 worth of merchandise, and she denied running to her van. When asked why Sabrina Dowdy told police that the Defendant had shoplifted from the store, the Defendant stated, "That's a retarded child we're dealing with." On re-direct examination, the Defendant testified that Sabrina Dowdy had had mental problems all of her life.

## II. ANALYSIS

We begin our analysis with several well-settled principles of law pertaining to the revocation of a probated sentence. When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. Tenn. Code Ann. § 40-35-311(e). Once the trial court makes such a finding, it is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." Id. When probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension . . . ." Id. § 40-35-310.

The Defendant argues that insufficient evidence was presented that she violated her probation. The decision to revoke probation is in the sound discretion of the trial judge. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Id.; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). Proof of a probation violation is sufficient if it allows the trial court to make a conscientious and intelligent judgment. State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

We conclude that sufficient evidence was presented that the Defendant violated her probation. Colles Webb testified that he witnessed the Defendant and three other females take an

array of items from the store and place them in a bag. He testified that he saw the Defendant attempt to leave the store with the items. Webb stated that the Defendant left her ten-year-old niece in the store with the items, ran to her mini-van, and drove in reverse out of the parking lot. The trial court noted that security officer Webb picked out the same person in a photographic line-up that the niece identified as the person who told her to steal. The trial court stated that there was "no basis for the officer's credibility to be in question." The trial court also stated that it did not find the Defendant's testimony to be very credible. Thus, we conclude that the trial court did not abuse its discretion by revoking the Defendant's probation.

Based on the foregoing reasons, we AFFIRM the judgments of the trial court.


_____
ROBERT W. WEDEMEYER, JUDGE